IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DIANNE J. MILLER and ROBERT N. MILLER and LISA M. SHANIKA,

For Themselves and As Representatives of a Class of Similarly Situated Persons,

Plaintiff,

vs.

THE UNITED STATES OF AMERICA,
Defendant.

Case No. 03-2489L

Sr. Judge Eric Bruggink

## Affidavit of Mark F. Hearne, II

**Comes Now**, Mark F. (Thor) Hearne, II, and states that to the best of his personal knowledge and belief the following is true and correct.

1. I am lead counsel in the case *Miller v. United States*. I graduated from Washington University School of Law in 1986 and have been admitted to practice before the Michigan and Missouri Supreme Courts and also admitted in the United States Supreme Court, the Second Circuit, the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Federal Circuit courts of appeals, as well as the United States Court of Federal Claims, The United States Court of International Trade, the U.S. District Court for the Eastern District of Missouri and other federal and state trial courts.

2. I have extensive state and federal litigation experience in cases involving substantive legal issues concerning real estate, constitutional and civil rights among other matters. I have represented more than two hundred property owners (both individually and in class actions) seeking to achieve compensation for a government taking of their

EXHIBIT 3

property. I have represented property owners in this and in other Trails Act taking cases in the United States Court of Claims as well as eminent domain and condemnation cases in Missouri state court. I have extensive experience representing property owners in real estate land use, zoning, condemnation, eminent domain, and tax assessment matters.

3. I was lead counsel for Grantwood Village in the *Grantwood Village v. United States* Trails Act taking case and also lead counsel for the class of property owners in the *Illig v. United States* Trails Act taking case and continue in my role as lead counsel in that case in currently pending appeal in the federal circuit.

4. I undertook representation of the named plaintiffs in this *Miller v. United States* taking case and of the class as a whole through my law firm, Lathrop & Gage, LC. I am a principle in the Lathrop & Gage law firm.

5. Lathrop & Gage, LC is a major law firm with more than 250 attorneys and offices in Washington, D.C., St. Louis, Missouri, Denver, Colorado, Boulder, Colorado, Kansas City, Missouri, Springfield, Missouri, Jefferson City, Missouri and Overland Park, Kansas. Lathrop & Gage members have extensive experience in federal and state litigation including all aspects of real estate and the unique issue of real estate subject to railroad rights-of-way.

6. Lathrop & Gage, LC, would not have undertaken this representation on a contingency basis without the expectation that they would receive one-third of the common fund if successful and that understanding was expressed in the engagement letter with lead plaintiffs.

7. Were Lathrop & Gage to have taken this case on the basis of an hourly rate billing arrangement, Lathrop & Gage would have required that:

a. The professional fees and any advanced expenses be billed and paid each month;

b. The hourly billing rates would be those specified in Exhibit "A" which range from $133 to $587 depending upon the specific professional involved (for years prior to 2006 the hourly rate would be slightly less for some professionals);

c. The class members post a substantial retainer sufficient to cover, at minimum, several months of anticipated legal fees and expenses; and,

d. The legal fees would be paid even if no recovery was obtained.

8. Lathrop & Gage, by reason of the experience possessed by myself and other members of the firm has unique expertise in federal Trails Act litigation that is not shared by other law firms. By virtue of this experience, Lathrop & Gage is able to more effectively (and more successfully) represent property owners in Trails Act taking cases, especially those involving Missouri law.

9. Based upon my conversations with members of other law firms with a practice in both Washington D.C. and in St. Louis it is my understanding that other law firms with the resources and experience to represent the class members would require a comparable contingency fee agreement (many other law firms would require a percentage of the common fund greater than one-third) or a comparable hourly billing agreement to undertake this case.

10. Were the only compensation Lathrop & Gage received for their representation of the class the lodestar amount – calculated at hourly rates noted in Exhibit "A" – they would not have agreed to represent the class unless this amount was paid monthly and a substantial retainer was paid as specified above. In other words,

Lathrop & Gage would not have agreed to represent the class if the only compensation for their services was the lodestar fee paid upon the successful conclusion of the case.

11. Bringing this case on behalf of the class members required Lathrop & Gage to invest substantial firm resources, including significant amounts paid for the salary of the professionals and staff involved in working on this case during the more than four years it was being litigated.

12. The total hours spent by Lathrop & Gage professionals on behalf of the class members exceeds 4,800 (The specific hours devoted to this case by each professional are detailed in Exhibit "A").

13. Lathrop & Gage – especially in light of the experience in the *Illig v. United States* case considers Trails Act taking litigation to carry a substantial risk when handled on a contingency fee basis.

14. All time spent by Lathrop & Gage professionals on behalf of the class members was time that was not spent on behalf of other firm clients. The vast majority of other Lathrop & Gage L.C. clients pay Lathrop & Gage current hourly rates for their representation or pay a fixed retainer monthly. Under these billing arrangements with other clients Lathrop & Gage L.C. is assured of receiving payment close in time to when the services are provided. Payment of legal fees and expenses contemporaneously with rendering the legal service would also provide Lathrop & Gage L.C. the use of those funds. Correspondingly, failure to receive payment for legal services when the services are rendered denies Lathrop & Gage L.C. the time value of those funds.

15. The total hourly rate attorney fee (using current lodestar method) is more than $1,900,000 for that time spent by Lathrop & Gage and additional professional time will be necessary to complete the administration of this case.

16. Lathrop & Gage has advanced more than $40,000.00 in out-of-pocket expenses on behalf of the class and additional expenses are anticipated.

17. Lathrop & Gage does not consider the lodestar amount alone to be adequate compensation because this delayed payment does not reimburse Lathrop & Gage for the risk of non-payment nor the loss in time value of the funds that would have been received had this case been handled on a hourly billing arrangement with payment made monthly.

18. I have personally spoken with most class members about various aspects of this case. A number of class members have recently called me in response to calls they have received from Jim Reid (another class member). Those class members that have called me concerning Mr. Reid have said that Mr. Reid encouraged them to file an objection to the attorney fees provision of the Settlement. These class members said that Mr. Reid was trying to assemble a group of class members to object, but that "no one was objecting and he needed some others to join him in his objection to attorney fees." These same class members (or their representatives) further said that they did not agree with Jim Reid's objection to attorney fees and that they had (or intended to) agree to the Settlement. A number of these class members expressed significant gratitude for class counsel's work on their behalf and commented that the attorney fee was "certainly fair".

Further affiant sayeth not.

Mark F. Hearne, II

Subscribed and sworn to before me this 14th day of November, 2006.

Notary Public

My commission expires:

NOTARY PUBLIC
NOTARY SEAL
STATE OF MISSOURI

BETHANY T. SCHULER
My Commission Expires
May 1, 2010
St. Louis County
Commission #06435083

| Name | Rates | Hours | Total |
|---|---|---|---|
| Aldrich, Tricia | $133 | 4.20 | 558.60 |
| Counte, Lindsay | $133 | 95.00 | 12,635.00 |
| Diefenbach, Susan | $133 | 0.50 | 66.50 |
| Duke, Jeffery | $244 | 1236.00 | 301,584.00 |
| Hearne, Thor | $587 | 1232.00 | 723,184.00 |
| Joyce, William | $244 | 229.80 | 56,071.20 |
| Marchant, Amy | $300 | 33.70 | 10,110.00 |
| Moore, Richelle | $133 | 27.00 | 3,591.00 |
| Pawlitz, Jeffery | $95 | 48.20 | 4,579.00 |
| Reeves, B.J. | $133 | 178.70 | 23,767.10 |
| Sears, Bob | $488 | 1714.60 | 836,724.80 |
| Snitzer, Ruth | $133 | 21.80 | 2,899.40 |
| Twardowski, Joe | $120 | 18.30 | 2,196.00 |
| **TOTAL** | | **4,839.80** | **$1,977,966.60** |

EXHIBIT
A